United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| P.A. ON BEHALF OF HER CHILDREN: MINOR DAUGHTERS ELA AND GLA; ET AL., <br><br> Plaintiffs, <br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, and DOES 1 TO 50, inclusive, <br><br> Defendants. | Case No.: 10-cv-02811-PSG <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> **(Re: Docket No. 38)** |

19  Defendant Federal Bureau of Investigation ("FBI") moves to dismiss the first amended

20 complaint. Plaintiffs P.A. on behalf of her minor children ELA and GLA, Carlos Del Carmen and

21 Julio Del Carmen (collectively "Plaintiffs") oppose the motion.[1] The parties appeared for hearing.

22 Having reviewed the papers and considered the arguments of counsel, the FBI's motion is

23 GRANTED, but with leave to amend.

### I. BACKGROUND

The allegations of the first amended complaint, as supplemented by facts subject to judicial

notice, are as follows.

---

[1] P.A. brings no claims on her own behalf.

1

Case No.: 10-02811
ORDER

Between 2006 and 2008, the FBI and the U.S. Immigration and Customs Enforcement ("ICE") conducted surveillance of Carlos Del Carmen, Sr. ("Carlos Sr."), his wife, P.A., and their family. The FBI and ICE suspected Carlos Sr. and P.A. of crimes including harboring an unknown number of illegal aliens. Carlos Sr. and P.A. have two sons, Carlos ("Carlos Jr.") and Julio, and two minor daughters, ELA and GLA. At the time of the incident at issue, Carlos Jr. and Julio were ages 16 and 15, respectively. The surveillance included monitoring their home, business, and family.

On June 12, 2008 at approximately 6 a.m., FBI and ICE agents jointly executed arrest and search warrants at the home. After the entering the home, the agents first encountered Julio. With their guns drawn, the agents forcibly slammed Julio to the ground, dragged him outside, and handcuffed him as he lay on his stomach in the front yard. The agents next encountered Carlos Jr. and he, too, was held at gunpoint.

ELA and GLA were awakened by the noise, came downstairs from their bedrooms, and were held at gunpoint. Carlos Sr. and P.A. were arrested and ultimately prosecuted.[2] As federal agents separated ELA and GLA from their parents, the girls began crying because they were not allowed to say goodbye to their mother. P.A. also began crying, which further upset the children. The agents ultimately took ELA and GLA to a local children's shelter.

In the first amended complaint, Plaintiffs bring *Bivens*[3] claims for violations of their constitutional rights against unlawful search and seizure and excessive force. Plaintiffs also bring claims for false arrest and false imprisonment, assault, and negligence.

---

[2] Both Carlos Sr. and P.A. entered guilty pleas before the Honorable Ronald M. Whyte. *See United States v. Alvarez*, Case No. CR 08-00328 RMW (N.D. Cal.).

[3] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

2

Case No.: 10-02811
ORDER

## II. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] While "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] In other words, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."[6] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[8]

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[9] Review of a motion to dismiss is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[10] The court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[11] Further, the court need not accept as true allegations that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint.[12]

---

[4] Fed. R. Civ. P. 8(a)(2).

[5] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[6] *Id.* at 1940 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Id.*

[8] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[9] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[10] *See id.* at 1061.

[11] *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[12] *See In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"[I]n the usual case where a defendant asserts an official immunity defense, the district court first decides whether the facts alleged in the complaint, assumed to be true, yield the conclusion that the defendant is entitled to immunity. This is the analysis under Rule 12(b)(6) on a motion to dismiss. If, taking the facts as stated in the complaint, the defendant is entitled to immunity, no discovery should be permitted and the case should be dismissed. . . . If a plaintiff passes this initial hurdle, he or she is entitled to enough discovery to permit the court to rule on a defendant's subsequent summary judgment motion brought under Rule 56."[13]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[14]

### III. DISCUSSION

**A. CLAIMS 1 AND 2: UNLAWFUL SEARCH AND SEIZURE AND EXCESSIVE FORCE**

**1. FBI**

The FBI argues that the constitutional claims brought against it cannot be maintained because the United States has not waived its sovereign immunity. Plaintiffs offer no direct response on the sovereign immunity issue, choosing instead to argue the substantive question of whether the FBI acted reasonably in planning and carrying out the execution of the warrants.

It is well-established that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."[15] Because the United States has not waived, nor has it been alleged that the United States has waived, sovereign immunity in actions seeking damages for constitutional violations, the motion to dismiss claims 1 and 2 is granted without leave to amend.[16]

---

[13] *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963-964 (9th Cir. 2004).

[14] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[15] *Department of Army v. Blue Fox, Inc.,* 525 U.S. 255, 259 (1999) (quoting *FDIC v. Meyer,* 510 U.S. 471, 475 (1994)).

[16] *Consejo de Desarrollo Economico de Mexicali, A.C. v. United* States, 482 F.3d 1157, 1173 (9th Cir. 2007); *Thomas-Lazear v. F.B.I.,* 851 F.2d 1202, 1207 (9th Cir. 1988).

### 2. Unnamed Individual Agents

The FBI next argues that the *Bivens* claims against unnamed individual agents of the FBI and ICE should be dismissed based on qualified immunity. The FBI contends that the allegations regarding three of the represented plaintiffs amount to nothing more than that, during the execution of a lawfully-issued warrant, they were awoken to face drawn guns and were denied a chance to say goodbye to their mother before being taken to a shelter. Nothing in any of this establishes a violation of any constitutional right, says the FBI, let alone a violation of a clearly established right. Regarding the fourth plaintiff, Julio, the FBI argues that "[n]ot every push or shove, even if it may seem unnecessary in the peace of a judge's chambers' [sic] violates the Fourth Amendment."[17]

Plaintiffs respond simply that "the unreasonable acts of waking the children out of their sleep with gunmen or knocking down another child and dragging him across the concrete certainly does not maintain any decorum of reasonableness."[18]

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Thus, in order to determine whether qualified immunity protects a government official, a court must decide, first, whether a plaintiff has produced evidence showing that the official violated a constitutional right and, second, whether that right was 'clearly established' at the time of the alleged misconduct."[19] "[W]hether a right is clearly established turns on 'whether it would be clear to a reasonable officer that his conduct was

---

[17] *Tekle v. United States of America*, Case No. CV 01-3894-RSWL, 2009 U.S. Dist. LEXIS 39091, at *22 (C.D. Cal. May 8, 2009) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)).

[18] *See* Docket No. 44 (Opp. To Mot. to Dismiss) at 5.

[19] *Conner v. Heiman*, No. 10-17545, 2012 WL 759618, at *4 (9th Cir. Mar. 9, 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

unlawful in the situation."[20]  "Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of legal facts."[21]

Based upon the few facts alleged in the first amended complaint, and the limited arguments presented in their brief, Plaintiffs do not show that conduct alleged, even if assumed to be a constitutional violation, violated any clearly established constitutional rights.[22]  To begin, the agents were undoubtedly authorized to detain Plaintiffs during the execution of the warrants.  It is well-settled that "a warrant to search for contraband founded on probable cause carries with it the limited authority to detain the occupants of a premise while a proper search is conducted."[23]  With the issue of detention itself put to the side, there remains only the question of whether Plaintiffs have met their burden of identifying a clearly established right against the circumstances of those detentions that they allege in the complaint.[24]  The answer to that question is no.  "[A]ll claims that

---

[20] *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[21] *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (internal quotation marks omitted).

[22] In turning to the second of the *Saucier* inquiries, the court takes guidance from *Pearson* to avoid deciding constitutional questions unless required:  "There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  *Pearson*, 555 U.S. at 237.  *See also Ammons v. Washington Dept. of Social and Health Services*, No. 09-36130, 2011 WL 3606538, at *4 (9th Cir. Aug.17, 2011) ("Courts are given the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'").

[23] *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  *See also United States v. Enslin*, 327 F.3d 788, 797 n.32 (9th Cir. 2003) (holding that *Summers* applies in the context of both arrest and search warrants).  *See also Sanchez v. Canales*, 574 F3d 1169, 1173 (9th Cir. 2009) (holding that officers were entitled to qualified immunity on unreasonable detention claim  even though detainees, including minors, posed no danger)

[24] *See Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2010) ("The plaintiff bears the burden of proving that the rights [he] claims were 'clearly established' at the time of the alleged violation.").  Although the complaint references arrests without probable cause, Plaintiffs include no allegations supporting that they were arrested—rather than merely detained— along with their parents.  The gravamen of Plaintiffs' complaint instead concerns the circumstances of their detention, to which the court directly its analysis.

law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[25] Plaintiffs identify no consensus of authority clearly establishing the unreasonableness of confronting drawn weapons, separation or a denial of a chance to say goodbye in circumstances such those pleaded here.[26] Even with respect to their allegations regarding the force used against Julio, Plaintiffs bring to the court's attention no consensus of authority that at the time of the incident clearly established that the force alleged was excessive. If anything, relevant authorities approving of similar actions in similar circumstances affirmatively establish that no such consensus existed to which agents such as the defendants should have taken heed.[27]

This is not to suggest in any way that the only way Plaintiffs could avoid a qualified immunity defense here would be to find a published case on all fours with the facts of their complaint. The Supreme Court has explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[28] But Plaintiffs' papers offer no cases at all that suggest that the state of the law in 2008 gave the agents fair warning that their

---

[25] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[26] *Cf. Wilson v. Layne,* 526 U.S. 603, 615, 616 (1999) (noting that "[p]etitioners [had] not brought to [the Court's] attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they [sought] to rely, nor [had] they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful").

[27] *See, e.g.,Tekle,* 2009 U.S. Dist. LEXIS at *20-23 (finding agent's actions in detention of eleven year-old plaintiff during execution of arrest warrant for parent to be reasonable, where actions included forcing plaintiff to his knees, handcuffing plaintiff and drawing of weapons against plaintiff). *Cf. Hartmann v. Hanson*, Case No. C 09-03227 WHA, 2010 U.S. Dist. LEXIS 5011, at 24-25 (N.D. Cal. Jan. 22, 2010) (granting qualified immunity after finding circumstances of detention lay in "the gray area" between precedents affirming and rejecting claims of unlawful detention) .

[28] *Hope v. Pelzer,* 122 S. Ct. 2508, 2514-18 (2002). *See also Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011).

7

Case No.: 10-02811
ORDER

treatment of Plaintiffs constituted an unconstitutional search or seizure or excessive force. The best Plaintiffs do is to cite the Ninth Circuit's pronouncement in *Dawson* that detentions during warrant executions be conducted "in a reasonable manner."[29] But relying upon a general right against unreasonable detention in the face of a qualified immunity challenge like the one presented here runs afoul of the Supreme Court's pronouncement that a qualified immunity analysis must take care to define the right "at the appropriate level of specificity."[30]

The FBI's motion to dismiss the claims against the unnamed agents is granted. Because the court is not persuaded that any amendment would be futile, leave to amend also is granted.

### B.   CLAIMS 3-5: TORT CLAIMS

Under the Federal Tort Claims Act ("FTCA"), tort claims related to the acts of federal employees acting within the scope of their employment must be brought against the United States of America.[31] Plaintiffs have not done so here. Indeed, at the hearing, they conceded this failure. On this basis alone, Plaintiffs' tort claims must be dismissed. Once again, however, the court is not persuaded that any amendment would be futile. The court therefore again grants Plaintiffs leave to amend.

In the event Plaintiffs elect to amend, they should take care to address other fatal flaws in their claims. At a minimum, regarding the claim of false arrest and false imprisonment, none of the four represented plaintiffs is alleged to have been arrested. In addition, under California law, the torts of false arrest and false imprisonment are not separate.[32] Nor have Plaintiffs sufficiently

---

[29] *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir. 2006).

[30] *Wilson v. Layne*, 526 U.S. 603, 615 (1999). *See also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

[31] 28 U.S.C. § 2679(a),(b) and (d); *see also United States v. Smith*, 499 U.S. 161, 163 (1991).

[32] *See Watts v. County of Sacramento,* 250 F.3d 886, 891 (9th Cir. 2001).

8

Case No.: 10-02811
ORDER

alleged that they were falsely imprisoned without lawful privilege. As the court has previously noted, temporary detention of occupants of a home not suspected of committing a crime during the execution of a search warrant is proper.[33] The claim for assault, too, includes insufficient facts. Plaintiffs allege that "[they] were all intimidated at gun point and physically grabbed, shoved, moved and directed against their will by the Investigating Agencies." Plaintiffs have not alleged that the federal agents unlawful intended to inflict immediate injury on any of the Plaintiffs. Finally, Plaintiffs' negligence claims allege "harm, pain, suffering, and emotional distress," but do not offer any specifics that permit an evaluation of their plausibility, as *Iqbal* clearly requires.

## IV. CONCLUSION

No later than April 13, 2012, Plaintiffs shall file any second amended complaint.

**IT IS SO ORDERED.**

Dated:   3/29/2012

PAUL S. GREWAL
United States Magistrate Judge

---

[33] *See Summers,* 452 U.S. at 705.