1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| P.A., on behalf of her minor daughter ELA and minor daughter GLA; CARLOS JR. DEL CARMEN, individually; and JULIO DEL CARMEN, individually;<br><br>            Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA, et. al.,<br><br>            Defendant. | Case No.: C 10-2811 PSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTION TO COMPEL**<br><br>**(Re: Docket Nos. 83, 89, 93)** |

Plaintiffs P.A. et. al. ("Plaintiffs") sued the United States of America ("USA") for a number of common law tort claims arising from the government's execution of search and arrest warrants. Before the court is the government's motion for summary judgment. Plaintiffs oppose. On May 7, 2013, the parties appeared for oral argument. For the reasons set forth herein, the court GRANTS Defendants' motion for summary judgment.

United States District Court
For the Northern District of California

# I.    BACKGROUND[1]

## A.    Federal Government Investigation and Indictment

Over the course of approximately two years, the Federal Bureau of Investigation ("FBI") and U.S. Immigration and Customs Enforcement ("ICE") investigated a tip that Plaintiffs Paula Luna Alvarez ("Alvarez") and Carlos Jr. Del Carmen, Sr. ("Carlos Sr.") were engaged in human trafficking.[2]  Through their investigation, the federal agents observed that Alvarez and Carlos Sr. lived at their house in San Jose with four young persons who appeared to be their minor children.[3] It was later confirmed that Alvarez and Carmen Sr. did have four children living with them: Carlos Del Carmen, Jr. ("Carlos Jr."), Julio Del Carmen ("Julio"), ELA, and GLA,[4] who are the real-parties-in-interest in this case.  At least ten other individuals also appeared to live at the house, including at least four other young adult men.[5]  The federal agents surmised that many of these people were likely illegal aliens.[6]  The agents also noted that the adult occupants left home early in the morning to work at a restaurant.[7]

The agents presented the results of their investigation to the United States Attorney's Office, which decided to prosecute the case.[8]  A grand jury indicted Alvarez and Carlos Sr. on

---

[1] The court reviews the record in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[2] *See* Docket No. 83-7 ¶ 3.

[3] *See id.* ¶ 4.

[4] Two of the four plaintiffs are minors and are identified only by their initials in order to protect their privacy.

[5] *See id.*

[6] *See id.*

[7] *See id.*

[8] *See id.* ¶ 3.

2

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

**United States District Court**
For the Northern District of California

charges of illegally harboring aliens, Social Security fraud, and international money laundering.[9]  A

federal magistrate judge issued arrest warrants relating to the charges stated in the indictment and a

search warrant for the family residence to be executed between 6:00 AM and 10:00 PM.[10]

At the time of these events, Carlos Jr. was 17 years old, Julio was 16, ELA was 9, and GLA

was 8.[11]  Carlos Jr. was 5'7 and weighed 185 pounds and Julio was 5'8 and weighed around 170

pounds.[12]  Julio confirmed that the four other young adult males who generally stayed at the

residence were in their 20s and 30s.[13]  Carlos Jr. and Julio both played on their school's varsity

football team, and Julio sometimes lifted weights with two of the other adult males in the house.[14]

As the federal agents were aware that children lived at the residence, they arranged for two FBI

Victim Specialists to be present during the search, and notified county Children Protective Services

("CPS") to assist after the parents' arrest.

**B.      Execution of the Warrants**

On June 12, 2008, at approximately 6:00 AM, 32 federal agents executed the search and

arrest warrants at the residence of Alvarez and Carlos Sr.[15]  These agents were assigned to enter the

residence, detain the targets, and preserve all relevant evidence.[16]

---

[9] *See* Docket No. 83-1, Ex. I.  Carlos Sr. and Alvarez ultimately entered guilty pleas to a single count of conspiracy to commit social security fraud.  *See United States v. Alvarez*, Case No. CR 08-00328 RMW (N.D. Cal. May 14, 2008).

[10] *See* Docket No. 83-6, Ex. E; *see also* Docket No. 83-7 ¶ 3.

[11] *See* Docket No. 83-2, Ex. K at 81-82.

[12] *See* Docket No. 83-3, Ex. L at 75.

[13] *See* Docket No. 83-2, Ex. K at 81.

[14] *See* Docket No. 83-2, Ex. K at 35:2-14, 87:3-24; Docket No. 83-3, Ex. L at 51:11-19.

[15] *See* Docket ¶ 10-11, Ex. C, Ex. D.

[16] See No. 83-7 ¶¶ 5, 8; *see* Docket No. 83-5 ¶ 5.

3

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

**United States District Court**
For the Northern District of California

C.      **National Geographic Video Footage**

During the initial execution of the search warrant, a crew from National Geographic filmed an approximately 4.5 minute video, showing the federal agents enter the target residence.[17]  The court has carefully reviewed the video in its entirety.  The film was taken from outside the residence at the end of the driveway and captured the sequence of events following.[18]  Before entering, the agents approached the front door and noticed some movement in an upstairs window.[19]  In response, they aimed their weapons at the window and commanded the person to come down and open the door.[20]  Shortly thereafter, the front door opened, and an unidentified male, later identified as Julio, appeared bare-chested before the agents.[21]  The agents then commanded Julio to "get down."[22]  In complying, he moved through the doorway behind a parked car and out of view of the camera.[23]  Agents immediately approached him and handcuffed him while he was on the ground.[24]  He remained out of view for roughly 30 seconds.[25]  Two minutes later in the video, Julio reappeared as an officer escorted him away from the residence across the driveway.[26]  There are no substantial signs of abrasions and Julio does not have any visible

---

[17] *See* Docket No. 83-7 ¶ 9, Ex. B.

[18] *See id.*

[19] *See id.* ¶ 10.

[20] *See id.*

[21] *See* Docket No. 88, Ex. 23.

[22] *See id.*

[23] *See id.*

[24] *See id.*

[25] *See id.*

[26] *See id.*

4

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

injuries.[27]  After three-and-a-half minutes, an agent announced "all clear" and Julio was led by another officer back into the home in handcuffs.[28]

**D.    Julio's Testimony**

In his deposition, Julio testified very differently before and after he was shown the videos and photographs captured by National Geographic.[29]  In his original testimony, Julio testified that he was awoken around 6:00 AM by the noise of federal agents outside his home.[30]  Upon looking out the window, he saw agents carrying assault rifles.[31]  Several of the agents aimed their weapons at him and commanded him to open the door downstairs.[32]  Julio then ran to his parents' room to wake them up.[33]  Then, he went downstairs to open the door for the officers.[34]  After opening the door, agents pointed their assault weapons inches away from his head and shouted conflicting directions, telling him to lie down on the steps.[35]  Officers then "thrust[] him to the ground" and he "flew off" the steps.[36]  Upon hitting the ground, he had the wind knocked out of him and was immediately handcuffed.[37]  He claimed that he was then "dragged across the entire driveway" lying

---

[27] *See id.*

[28] *See id.*

[29] *See* Docket No. 83-2, Ex. K.

[30] *See id.* at 90:8-20.

[31] *See id.* at 213:1-4.

[32] *See id.*

[33] *See id.* at 93:12-20.

[34] *See id.* at 99-100.

[35] *See id.* at 99:11-100:6; Docket No. 86-2 ¶ 4.

[36] *See* Docket No. 83-2, Ex. K at 56:5-15, 50:8-19.

[37] *See id.* at 56:14-19.

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

face down with his chest scraping against the concrete, causing his mouth and teeth to bleed.[38]
Several minutes later, an agent approached him, asked him for his age, and upon learning that he
was a minor took Julio back into the house.[39]

Later in the deposition, Julio was shown the video of the incident as well as several
photographs.[40]  After viewing the footage, he commented, "I do think I made it more dramatic then
it was."[41]  He stated that he could "obviously" see that the agents were not carrying or aiming
assault rifles at him from outside the window.[42]  He also acknowledged that the photos also showed
that he was walked down the driveway rather than being dragged across it and that the agents at the
front door had their guns several feet rather than several inches away from him when he opened
it.[43]  Julio also testified that he could not see any injuries to his chest in the video or the photos,
although he later signed a declaration that he suffered scratched, bleeding knees and could taste
blood in his mouth after the agents knocked him off the steps on to his chest.[44]  As he was lying on
the ground, agents filed past him and continued to point their weapons at him.[45]  He remained
outside in handcuffs until he was taken inside and allowed to join his siblings.[46]  Julio noted that
his recollection of events remained different – while obviously, the video footage and photographs

_____

[38] See id. at 56:14-19, 58:4-20, 121:2-24.

[39] See id. at 129:1-16.

[40] See Docket No. 83-1 ¶ 8.

[41] See Docket No. 83-2, Ex. K at 315:2-12.

[42] See id. at 312:3-4.

[43] See id. at 314:16-22.

[44] See id. at 318:6-8; 320:4-7; Docket No. 86-2 ¶ 5, 7.

[45] See Docket No. 86-2 ¶ 6.

[46] See Docket No. 83-2, Ex. K at 129:1-16.

6

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

showed him experiencing a set of "very different events," his memory remained the same, although

he says he may have misremembered them.[47]  Julio explained further,

> Okay.  I do – I do think I made it more dramatic than it was.  And it's kind of me going back to my – have you ever read the book "One Flew Over the Cuckoo's Nest"? … You know the Indian who thinks he's small, but he's really not? In a similar way, I think that's what happened with me.  I think I might have made it to be something it really wasn't because it's something that was just so traumatic or so sudden that it might have changed my view of it.  Might have created a fake reality.[48]

**E.     Carlos Jr.'s Testimony**

Carlos Jr. testified at deposition that after learning the FBI were at his house, he ran

downstairs towards the front door.[49]  Halfway down the staircase, he encountered the agents, who

aimed their guns at him momentarily, after which he stopped running and started walking.[50]  The

agents then lowered their guns.[51]  The agents issued commands, but did not use profanity.[52]

Reaching the bottom of the staircase, an agent motioned for him to sit in the living room, where he

joined ELA.[53]  He saw the agents bring Julio in, who was handcuffed.  He demanded the agents

remove Julio's handcuffs, which they did after thirty seconds or so.[54]

---

[47] *See id.* at 323:1-9.

[48] *See id.* at 315:9-21.

[49] *See* Docket No. 83-3, Ex. L at 83:15-84:24.

[50] *See id.* at 88:10-17.

[51] *See id.* at 99:9-11.

[52] *See id.* at 99:16-23.

[53] *See id.* at 71:2-13, 89:19-22.

[54] *See id.* at 91:18-25, 94:4-20.

7

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**F.      ELA's Testimony**

ELA testified at deposition that she walked downstairs, shortly after Julio had opened the front door.[55]  As she walked down the stairs, she could see Julio's legs near the open doorway right as agents filed past Julio in the home.[56]  ELA has testified that after she walked down the stairs, the agents entered the house and about six agents pointed guns at her, including at least one rifle.[57]  ELA claims that even after realizing that she was a young girl, the agents continued to point their weapons at her.[58]  As she continued walking down the stairs, she was lightly pushed and a masked agent came up from behind her, put his right arm on her back and pointed his weapon at close range.[59]  This agent then guided her down the stairs and into the living room, a trip that took roughly ten seconds.[60]  ELA then moved toward a rolled-up carpet on the floor to sit down, after which the agent finally lowered his weapon.[61]  ELA sat in the room until she was meet by her other siblings, and claimed she did not suffer any physical injuries.[62]

Carlos Jr. testified that he also witnessed the agent guide ELA down the stairs, but contrary to her account of the event, the agent did not have his gun pointed at her head, but rather "in a relaxed position… pointed at the floor."[63]

_____

[55] *See* Docket No. 83-3, Ex. M at 27:22-25.

[56] *See id.* at 34:6-16.

[57] *See id.* at 58:11-59:3, 156:10-16.

[58] *See id.* at 34:9-24.

[59] *See id.* at 58:11-59:3, 156:10-16.

[60] *See id.*

[61] *See id.* at 157:1-6.

[62] *See id.* at 82:9-15.

[63] *See* Docket No. 83-3, Ex. L at 69:15-17.

8

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

In ELA's declaration filed in response to this motion, she makes no mention of the masked agent pointing a gun at her head and states merely that as she came down the stairs of her house, she saw police "aiming weapons at [her] and [] shouting."[64]

## G.    GLA's Testimony

GLA testified at deposition that she followed Carlos Jr. down the stairs.[65]  As she began descending, agents initially pointed their weapons at her, then an agent approached her, lowered his weapon and walked her down into the living room with her other siblings.[66]  Her most recent declaration is consistent in that she claims that as she came down the stairs, the police "aimed their guns at [her] for a short time then lowered their guns but did not put their guns away... [then one officer] walked me down the stairs… and directed me to sit on the ground next to my sister."[67] Carlos Jr. disputes this account of events, stating that the agents never pointed a weapon at her during the confrontation.[68]  GLA admits that no agent made physical contact with her and she does not allege any physical injuries resulting from the incident.[69]

After all the children were gathered in the living room, the agents asked if they would like to move to a more comfortable room and escorted them upstairs into one of the girls' bedrooms.[70] There they were questioned by the agents and permitted to change their clothes and gather their

---

[64] *See, generally,* Docket No. 86-5.

[65] *See* Docket No. 83-3, Ex. L at 101:13-18.

[66] *See* Docket No. 83-3, Ex. N at 91:8-21.

[67] *See* Docket No. 86-4.

[68] *See* Docket No. 83-3, Ex. L at 98:11-13

[69]  *See* Docket No. 83-3, Ex. N at 68:14-18.

[70] *See* Docket No. 83-2, Ex. K at 149:4-11.

9

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

belongings.[71]  A couple hours later, Victim Specialists and CPS arrived on the scene to assist with the children.[72]

## H.    Procedural History

Plaintiffs filed this suit, alleging constitutional violations under 42 U.S.C. § 1983 for unlawful search and seizure, excessive force, and cruel and unusual punishment, as well as common law tort claims under the Federal Tort Claims Act ("FTCA") for false imprisonment, false arrest, assault, and negligence.[73]  Plaintiffs voluntarily abandoned the cruel and unusual punishment claim.[74]  On March 29, 2012, the court granted Defendants' motion to dismiss on all claims, but with leave to amend.[75]  Plaintiffs filed a second amended complaint ("SAC"), this time alleging only the FTCA tort claims.[76]  Defendants again moved to dismiss.  Accepting all allegations in the SAC as true, and with an eye to the Ninth Circuit's recent decision in *Avina v. United States,* the court denied the motion, allowing the case to move forward.[77]

## II. LEGAL STANDARDS

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[78]  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery and affidavits

---

[71] *See id.* at 233:1-8.

[72] *See* Docket No. 83-7 ¶ 5.

[73] *See* Docket No. 1.

[74] *See* Docket No. 35.

[75] *See* Docket No. 52.

[76] *See* Docket No. 53.

[77] *See* Docket No. 70.

[78] Fed. R. Civ. P. 56(a).

10

United States District Court
For the Northern District of California

which demonstrate the absence of a triable issue of material fact.[79]  If, as here, the moving party is the defendant, he may do so in two ways: by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[80]

If met by the moving party, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[81] "However, a non-movant's bald assertion or mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."[82]  In reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[83]

The non-moving party may also oppose a motion for summary judgment by providing an affidavit or declaration showing that, for specific reasons, he cannot present facts essential to his opposition.[84]  The court may then deny the motion for summary judgment or defer ruling on the motion and allow additional time for discovery.[85]

---

[79] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[80] *Celotex Corp.*, 477 U.S. at 331.

[81] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[82] *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

[83] *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[84] *See* Fed. R. Civ. P. 56(d).

[85] *See id.*

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

**III. DISCUSSION**

**A.      Plaintiffs' Evidentiary Objections**

Plaintiffs object to the use of the National Geographic video footage of the incident, initially on the grounds that Defendants have not authenticated the video.  Evidence offered to support a motion for summary judgment must be able to be presented "in admissible form at trial."[86]  Under Federal Rules of Evidence 901, evidence may be authenticated by a witness with knowledge that the item is what it is claimed to be.  Defendants filed two additional declarations to establish the authenticity of the video.  Special Agent Alex Mah ("Mah") stated that he requested a copy of the video footage from National Geographic, received it via Federal Express, tagged it, and placed it in the evidence room at the FBI.[87]  Special Agent Graham Bradford May ("May") declared that he participated in the execution of the search and arrest warrants on June 12, 2008.[88] He reviewed the video and stated he was outside for the entire duration of the video.[89]  Having personal knowledge of the events depicted, May stated the video was a fair and accurate depiction of what happened and he could see no indication of editing or "doctoring" of the video.[90]  These declarations, by persons with personal knowledge as to the events depicted in the video and the FBI's acquisition of the video, establish the authenticity of the document.[91]  The video therefore may be considered for purposes of the motion for summary judgment.

---

[86] *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

[87] *See* Docket No. 87-3 ¶ 3-4.

[88] *See* Docket No. 87-4 ¶ 2.

[89] *See id.* ¶¶ 3-4.

[90] *See id.* ¶ 4.

[91] *See*

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs next object that the video only shows a select part of the events that occurred.  For example, the video does not show parts of what happened to Julio on the driveway.  While this may be true, that fact does not prevent the video from being entered into evidence.  Plaintiffs may present contrary evidence such as Julio's own testimony.

Plaintiffs also object that the National Geographic video is "hearsay."  In their objection, Plaintiffs do not identify a particular statement in the video that was asserted for the truth of the matter stated, but rather argue the entire video is inadmissible hearsay evidence.[92]  But Plaintiffs misunderstand the evidentiary rule against hearsay, which is aimed at *statements* presented for the truth of the matter stated.[93]  The hearsay rule does not include "conduct, verbal or nonverbal, not intended as an assertion."[94]  Video evidence documenting the events on June 12, 2008 are visual depictions and do not constitute a "statement" intended to be an "assertion."[95]  It would be different if Plaintiffs identified a particular phrase spoken by one of the actors, and argued it was being presented for the truth of the matter stated,[96] but Plaintiffs have not done so here.  The hearsay rule therefore does not apply.

Although Plaintiffs further express some reservation about possible "doctoring" of this video that should bar admissibility, they cannot merely "conjure up hypothetical possibilities that

---

[92] *See* Docket No. 86 at 11 ("[T]he video presented is essentially hearsay because it was presented for the truth of the matter.").

[93] *See* Fed. R. Evid. 801 (defining "hearsay" as a statement by an out-of-court declarant which if offered "to prove the truth of the matter asserted in the statement;" and "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").

[94] Fed. R. Evid. 801(a) Advisory Notes.

[95] *See, generally,* Fed. R. Evid. 801; *cf. Deep Sea Research, Inc. v. Brother Jonathan*, 883 F. Supp. 1343, 1347, n.1 (N.D. Cal. 1995), *overruled on other grounds by California v. Deep Sea Research, Inc.*, 523 U.S. 491 (1998) (admitting visual aspect of video showing whether a ship was embedded on the sea floor, but excluding audio).

[96] *See id.*

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

tampering occurred."[97]  Plaintiffs point to no facts that might even suggest the possibility of

doctoring.[98]  The mere assertion is not enough, and so the video is admitted.

## B.   Plaintiffs' 56(d) Request

Plaintiffs request that the summary judgment motion be postponed because Plaintiffs have

not had a chance to gather sufficient evidence to support their opposition.  A request under Rule

56(d) must contain a "good faith showing by affidavit that the continuance is needed to preclude

summary judgment."[99]  Plaintiffs must show that they have set forth specific facts they hope to

obtain through further discovery, the facts sought exist, and that they are "essential" to oppose the

summary judgment motion.[100]

Plaintiffs claim that a continuance is warranted because they have not had a chance to

depose the agents, nor have they had a chance to cross-examine themselves.[101]  Regarding

Plaintiff's first assertion, although Plaintiffs point out they have not yet undertaken certain

discovery, they have not set forth "specific facts" that they hope to elicit by deposing the officers,

---

[97] *United States v. Cortelleso*, 663 F.2d 361, 364 (1st Cir. 1981).

[98] *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (holding district court properly relied on videotape where there were "no allegations or indications that this videotape was doctored or altered in any way").

[99] *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

[100] *Id.*

[101] *See* Docket No. 86-1 ¶ 3.  The court notes that Plaintiffs have also filed a motion requesting an extension of the deadline for fact discovery so that Plaintiffs can complete those depositions.  *See* Docket No 89.  Plaintiffs do not allege that the delay in taking officer depositions was due to Defendants' bad faith or stonewalling, or otherwise establish that their efforts to take the requested discovery were diligent.  The absence of any demonstration of diligence is enough to deny this motion.  *See Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  Plaintiffs delayed until less than four weeks before the close of fact discovery to request any depositions, and then, after settling on a date with Defendants, cancelled without explanation.  *See* Docket No. 94 ¶¶ 16-22, Ex. H.  Coupled with the absence of any explanation how Defendants' statements might support their theory of the case, this lack of good cause requires that Plaintiffs' motion be DENIED.

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

1  nor have they explained why those facts are essential to opposing Defendants' motion.[102]  Plaintiffs

2  give no clue as to what admissions they hope to gain from the agents to counter Defendants'

3  motion, which is not obvious to the court considering Defendants do not rely on agent statements

4  to dispute Plaintiffs' testimony of their encounters with the agents.  Plaintiffs' request is therefore

5  plainly insufficient to satisfy the requirements of Rule 56(d).[103]  The latter assertion also does not

6  hold weight, as Plaintiffs are free to submit declarations in opposition to their motion for summary

7  judgment, which they have.[104]

8          Plaintiffs also assert without explanation that they have not begun expert discovery.[105]  But

9  a motion for summary judgment can be brought at any time; it is up to the party requesting

10 continuance to provide specific facts they reasonably expect to obtain to oppose the motion.

11 Plaintiffs have not done so.  Plaintiffs' assert that expert discovery is necessary to assess the

12 reasonableness of the officers' actions given the Plaintiffs' minor status and the damages they

13 suffered.  The reasonableness of the officers' actions is a legal question that is determined through

14 study of the case law, not expert discovery.[106]  Experts cannot testify on the law.  The amount of

15 damages, too, is not an essential fact necessary to oppose summary judgment on the question of

16 liability.  Because Plaintiffs have not presented any valid reasons to deny or defer ruling on the

17 summary judgment motion, and thus have not complied with Rule 56(d), their request is denied.

18 The court proceeds to consider the merits of the motion.

---

[102] *See California*, 138 F.3d at 779.

[103] *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("Failure to comply with the requirements of [Rule 56(d)] is a proper ground for denying relief").

[104] *See, generally,* Docket No. 86.

[105] *See* Docket No. 86-1 ¶ 4.

[106] *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

15

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

## C.   The Federal Tort Claims Act and California Law

Plaintiffs' remaining claims are tort claims for false arrest and false imprisonment, assault, and negligence, brought under the FTCA.  The FTCA provides an exception to the United States' immunity from torts.[107]  As the events at issue took place in California, the court applies California law.[108]

Under California law, false arrest is not a separate tort, but a subcategory of false imprisonment.[109]  The elements of the tort of false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."[110]  Officers may detain the occupants of a premise while conducting a lawful search pursuant to a warrant,[111] so long as they do not violate the Fourth Amendment's prohibition on unreasonable searches and seizures.[112]

The tort of assault requires that Plaintiffs establish: (1) the defendant threatened to touch the plaintiffs in a harmful or offensive manner, (2) it reasonably appeared to the plaintiffs that the defendant was about to carry out the threat, (3) the plaintiffs did not consent to the conduct, (4) the plaintiffs were harmed, and (5) defendant's conduct was a substantial factor in causing plaintiffs harm.[113]

---

[107] *See Tekle v. United States*, 511 F.3d 839, 851 (9th Cir. 2007).

[108] *See Richards v. United States*, 369 U.S. 1, 7 (1962).

[109] *See Garcia v. City of Merced*, 637 F. Supp. 2d 731, 752 (E.D. Cal. 2008).

[110] *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1165 (N.D. Cal. 2009) (quoting *Lyons v. Fire Ins. Exch.*, 161 Cal. App. 4th 880, 888 (2008)).

[111] *See Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Michigan v. Summers,* 452 U.S. 692 (1981).

[112] *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

[113] *See Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012).

16

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

To prevail on a negligence claim, the plaintiff must show that (1) the defendant owed a legal duty to conform to a certain standard of conduct to protect the plaintiff, (2) the defendant failed to conform his behavior to this standard, (3) the defendant's actions proximately and legally caused the resulting injury, and (4) the plaintiff suffered damage.[114]

Additionally, as Plaintiffs' tort claims target the agents' execution of a warrant in their official capacities, and Plaintiffs do not challenge that the warrant was defective, Plaintiffs also bear the burden of proving that the agents' used "unreasonable force."[115]  California courts have recognized that a police officer should not be considered equal to a private defendant because "[t]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[116]  Police officers acting in their official capacities may thus "use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance."[117]  In other words, an officer is entitled to make a lawful arrest or detention without facing tort liability as long as they do not use excessive force.[118]  This threshold concern is proper because "the risk of inhibiting law enforcement intervention necessary for the preservation of community welfare and peace outweighs the

---

[114] *See Doe v. City of San Mateo*, 2011 U.S. Dist. LEXIS 12892, at *34 (N.D. Cal. Feb 9, 2011).

[115] *Avina*, 681 F.3d at 1131.

[116] *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998).

[117] *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004).

[118] *Id.* at 1101 (quoting Cal. Pen. Code § 835(a)).  Courts have applied this additional requirement of showing the officers acted with "unreasonable force" to the torts of negligence, battery, assault, and false imprisonment.  *See id.* at 1102 (applying this element to negligence claims); *Edson*, 63 Cal. App. 4th at 1273 (applying standard to assault and battery); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (holding that officers' immunity from California state law claims, including false arrest and false imprisonment, depend on whether Defendants' used excessive force).

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

1    importance of ensuring nonnegligent treatment" of persons coming into contact with law

2    enforcement.[119]

3          The question, then, is whether the agents' actions were "objectively reasonable based on the

4    facts and circumstances confronting" the agents at the time.[120]  The agents' objective

5    reasonableness is determined by weighing "the nature and quality of the intrusion on the

6    individual's Fourth Amendment interests against the countervailing governmental interests at

7    stake," in light of the totality of circumstances.[121]  Reasonableness must be adjudged from the

8    "perspective of a reasonable officer on the scene rather than with 20/20 vision of hindsight."[122]

9    This is because police officers are often asked to make "split-second judgments – in circumstances

10   that are tense, uncertain, and rapidly evolving."[123]

11         In denying Defendants' motion to dismiss the SAC, this court relied extensively on the

12   Ninth Circuit's analysis of reasonable force in *Avina v. U.S.*  In *Avina,* DEA agents conducted a

13   search warrant of the Avinas' mobile home for suspected drug trafficking.[124]  The Ninth Circuit

14   held the agents' treatment of the adult inhabitants were objectively reasonable.  Execution of the

15   search warrant was an "inherently dangerous situation," and so the agents were justified "in

16   pushing down Thomas Avina, the adult male they encountered during initial entry of the home.[125]

17   They were also justified in the "use of handcuffs on the adult members of the Avina family"

18   ─────────────────

19   [119]  *Munoz*, 120 Cal. App. 4th at 1096.

20   [120] *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009).

21   [121] *Graham*, 490 U.S. at 396.  *See also Munoz*, 120 Cal. App. 4th at 1102.

22   [122] *Id.*

23   [123] *Graham,* 490 U.S. at 396-97.

24   [124] *See Avina*, 681 F.3d at 1128.

25   [125] *See id.* at 1132.

18

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

because it minimized the risk of harm to both officers and occupants."[126]  Regarding the family's eleven-year-old and fourteen-year-old daughters, however, the Ninth Circuit found a disputed issue as to whether the agents acted reasonably.  The agents yelled at the young girls to "get down on the fucking ground," pointed guns at their heads while they laid face-down on the floor, with their hands cuffed behind their backs, and then left them handcuffed on the floor for half an hour.[127]  In light of the ages of the two girls and the "limited threat they posed," the court found that a reasonable jury could conclude the agents used excessive force.[128]

Applying *Avina,* now on summary judgment, where allegations alone are insufficient and the court must consider what a reasonable jury looking at the evidence in the record would have to conclude, the court concludes that the agents' use of force was reasonable.  For each of the four plaintiffs, it is undisputed that the agents approached Plaintiffs' house to execute search and arrest warrants against the adults at the residence for charges of illegally harboring aliens, Social Security fraud, and international money laundering.  As they knew at least four adult males resided in the house, they had a reasonable interest in acting cautiously to protect their own safety.  The government also had legitimate interests in protecting destruction of evidence and preventing flight.[129]

Turning to the circumstances of each individual, Plaintiffs first argue that the agents acted unreasonably in their encounter with Julio in front of the house.  But it is undisputed that when the door opened and the agents encountered an athletically-figured 170-pound male who looked to be

---

[126] *See id.* (quoting *Mena*, 544 U.S. at 100).

[127] *See id.* at 1133.

[128] *Id.* at 1333.

[129] *See Bailey v. United States*, 133 S. Ct. 1031, 1048 (2013).

19

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

1   an adult, regardless of his minor status, the agents were presented with what appeared to be a

2   grown man due to his size and stature.  Some reasonable force was warranted to protect the

3   officers' safety.[130]  The National Geographic video and Julio's testimony, taken together, show

4   undisputedly that agents ordered Julio to get down on the ground, briefly pointed their service

5   weapons at him at a distance of approximately 15 feet, handcuffed him, and kept him in handcuffs

6   for about five minutes until they found out he was a minor child of the suspects.  The court need

7   not accept Julio's earlier inconsistent testimony that the agents pointed assault rifles at him and

8   dragged him across the driveway, scraping his chest.[131]  "Where there is video footage of the

9   events at issue, [] the court is *not* required to accept the plaintiff's version of events if it is clearly

10  contradicted by the video footage, so long as there is no dispute about whether the video footage

11  accurately reflects what actually occurred."[132]  For this reason, and because Julio later

12  acknowledges the accuracy of the video and the frailties of memory, and recants much of his prior

13  testimony,[133] there is no disputed issue of material fact regarding Julio's encounter with the agents

14  outside the residence.

15          Even if viewed in the light most favorable to Julio, these facts establish that the force used

16  was not excessive.  Unlike the plaintiffs in *Avina,* Julio was not held at gunpoint while handcuffed,

17  nor was he sworn at, pulled out of bed, or forced to lie face-down except for a matter of seconds

---

[130] *See Avina*, 681 F.3d at 1132 (officers were justified, during the hurried initial entry, in "forcefully push[ing]" the adult male down when he did not immediately comply with their instructions).

[131] *See Scott*, 550 U.S. at 378 (holding that Court of Appeals erred in adopting plaintiff's assertion of the events where a videotape documenting the events "quite clearly contradict[ed] the version of the story told by" the plaintiff).

[132] *Dunklin v. Mallinger*, Case No. 11-01275 JCS, 2013 WL 1501446, at *19 (N.D. Cal. Apr. 10, 2013) (emphasis original).

[133] *See* Docket No. 86-2.

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

while the agents filed past him to enter the house.  Except for the initial entry, no guns were

pointed at him.  Even accepting Julio's testimony that he had his knee scraped and had the wind

knocked out of him for a short time, which could be consistent with the video, "[n]ot every push or

shove, even it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

Amendment."[134]  Considering the record as a whole, a reasonable jury could not conclude that the

brief detention of Julio was unreasonable.  Holding otherwise would require officers to divine an

occupant's minor status, even if he looked like an adult, in the tense initial seconds of forcing entry

into a home and refrain from even a brief physical encounter in light of that status.  This the

constitution does not require.

     As for Carlos Jr., ELA, and GLA, the agents undeniably pointed guns at them while

securing the area.  The agents briefly trained guns on Carlos Jr., another mature male weighing

about 180 pounds, as he was sprinting down the stairs towards them.  After determining he was not

a threat, seconds later the agents dropped their guns.  The encounter resulted in no physical injury.

The agents also briefly pointed guns at ELA and GLA until they determined the children were not

threats, at which point they had them sit down in the living room.[135]  But even making all

reasonable inferences in favor of Plaintiffs, the agents trained their guns on the children for only

seconds.

     A reasonable jury could not condemn the agents for briefly aiming guns at the children for

about ten seconds before realizing they were no threat.  In the inherent dangerousness of executing

---

[134] *Tekle v. United States*, 2009 U.S. Dist. LEXIS 39091, at *21-22 (C.D. Cal. 2009).

[135] While ELA previously testified that an agent pointed a gun at her head, Carlos Jr. disputed this, and even ELA's most recent declaration makes no mention of this specific incident.  The opposition also fails to mention any agents aiming a weapon point-blank at ELA's head.  In any event, all accounts agree that at most the weapon was aimed at ELA for only a few seconds before her age was established.

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND
DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

a warrant,[136] the agents are justified in approaching every encounter with some caution.  This case is readily distinguishable from *Avina*, where the agents continued to point guns at the heads of the young girls and kept them handcuffed face down on the floor for up to half an hour even after it became apparent that the girls posed no threat.

Plaintiffs also argue that detaining the children for about three hours until county CPS arrived was not reasonable.  The agents were justified in keeping the children in the living room; as the Supreme Court has noted, "the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation."[137]  Allowing the children to wander around unsupervised might have hindered the search or endangered those involved.[138]  While undoubtedly a stressful situation, none of the children were otherwise harmed during the detention.  Unlike the children in *Avina,* other than Julio none of the children were handcuffed, forcibly pinned down, or subjected to profanities.  Although CPS did not arrive until about two hours later, any delay was not attributable to the agents because it is undisputed that they had notified the local agency well in advance and again on the morning of the parents' arrests.[139]  Further, the agents did not act unreasonably in the interim.  After the area was secure, the agents asked the children whether they wanted to go somewhere more comfortable and let the children change their clothes, collect their belongings, and whether they wanted some breakfast.[140]

[136] *See Hartmann v. Hanson*, Case No. 09-03227 WHA, 2010 U.S. Dist. LEXIS 5111, at *30 (N.D. Cal. 2010) (noting the "unknown danger faced by law enforcement when executing an arrest warrant at a residence").

[137] *Summers,* 452 U.S. at 702-03.

[138] *See Dawson v. City of Seattle*, 435 F.3d 1054, 1067 (9th Cir. 2006).

[139] *See* Docket No. 83-7 ¶ 7, Ex. C; Docket No. 83-5 ¶¶ 5-6, Ex. F.

[140] *See* Docket No. 83-3, Ex. L at 107:4-9, 116:22-25; Docket No. 83-3, Ex. N at 64:15-21, 68:13-16.

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL

Plaintiffs finally argue that Defendants could have chosen to execute the warrants at a different location or different time to avoid involving the children.  But decisions regarding how and when to make an arrest are protected discretionary functions of the government.[141]  Holding otherwise would unduly hinder the agents' planning and decisionmaking process.

## IV. CONCLUSION

Defendants' summary judgment motion is GRANTED.  Plaintiffs' motion for extension is DENIED.  Defendants' motion to compel is DENIED AS MOOT.

IT IS SO ORDERED.

Dated:  July 24, 2013

_Paul S. Grewal_
PAUL S. GREWAL
United States Magistrate Judge

United States District Court
For the Northern District of California

---

[141] *See* 28 U.S.C. § 2680(a). *See also Schuler v. United States,* 448 F. Supp. 2d 13, 20 (D.D.C. 2006); *Patel v. United States,* 806 F. Supp. 873, 878 (N.D. Cal. 1992).

23

Case No.: 10-2811 PSG
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY, AND DENYING AS MOOT DEFENDANTS' MOTIONS TO COMPEL